# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:13-cr-00091-04

DARRELL E. GILLESPIE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court are objections to the Presentence Investigation Report ("PSR") in this case filed by both Defendant and the Government. (ECF Nos. 894, 907.) The Court heard arguments from the parties during a hearing held on December 8, 2017. For the reasons provided herein, the Court **DEFERS** ruling on Defendant's objection as to the inclusion of the mandatory minimum sentences pursuant to 18 U.S.C. § 924(c) for his convictions on Counts Six and Twelve until the Supreme Court issues its decision in *Dimaya v. Sessions*, No. 15-1498, and **OVERRULES** the remaining objections made by both parties.

### I. DEFENDANT'S OBJECTIONS

#### A. *Minor Role Reductions*

Defendant first argues that based on his participation in the robberies that are the object offenses of Group One and Group Three of the PSR, he should be given two-point minor role reductions for each group pursuant to Section 3B1.2(b) of the United States Sentencing Guidelines

1

Manual ("Guidelines"). (*See* ECF No. 894 at 2; PSR at 29 ¶ 135, 31 ¶ 149.)[1]

Section 3B1.2(b) of the Guidelines provides that "[i]f the defendant was a minor participant in any criminal activity," a two-level decrease should be applied to the relevant offense level. Application Note 5 in the commentary to that section states that a minor participant is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The commentary to Section 3B1.2 also provides that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered" for the reduction, and "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." U.S.S.G. § 3B1.2 cmt. n.3(C). Further, the Court "should consider the following non-exhaustive list of factors" in determining whether to apply a minor role reduction:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* Ultimately, the determination "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.*

Because Guidelines Section 3B1.2(b) sets forth a mitigating factor to reduce Defendant's

---

[1] Citations to the PSR refer to the most recently revised copy provided to the Court on December 7, 2017.

offense levels within Groups One and Three, Defendant bears the burden of proof. *See United States v. Pratt*, 239 F.3d 640, 645 (4th Cir. 2001) (stating that Section 3B1.2 involves a mitigating role adjustment); *see also United States v. Solomon*, 274 F.3d 825, 828 n. 2 (4th Cir. 2001) (noting that "every circuit to consider [who bears the burden of proof] has assigned to the defendant the burden of proving entitlement to a sentencing reduction"). Thus, Defendant must show by a preponderance of the evidence that he is "less culpable than most other participants" for the object offenses in Groups One and Three. U.S. Sentencing Guidelines Manual § 3B1.2 cmt. n.5 (U.S. Sentencing Comm'n 2016) [hereinafter U.S.S.G.]; *see United States v. Hassan*, 742 F.3d 104, 150 (4th Cir.), *cert. denied*, 135 S. Ct. 157 (2014); *United States v. Vicks*, 529 F. App'x 383, 385 (4th Cir. 2013) (unpublished opinion) (per curiam) (finding that a minor role reduction was not warranted for the defendant's sentence for Hobbs Act robbery conspiracy where he did not show by a preponderance of evidence that he played a minor role in the offense); *United States v. Powell*, 680 F.3d 350, 358 (4th Cir.) (setting forth the burden of proof and affirming the denial of a Section 3B1.2 role reduction), *cert. denied*, 568 U.S. 922 (2012); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986) (finding that a preponderance of the evidence standard applies to factual disputes at sentencing).

   1. Group One: Robbery of Theodore Dues

At Defendant's trial, Robert Barcliff ("Barcliff") testified that Defendant participated in the December 13, 2011, robbery of Theodore Dues ("Dues") in Kanawha City in the hopes of retrieving high-grade marijuana from his residence, (*see* ECF No. 631 at 26; *see also* ECF No. 632 at 38), and Brandon Davis ("Davis") testified that Barcliff identified Dues as a target victim, (*see* ECF No. 683 at 24). Keith Glenn ("Glenn"), another co-conspirator and participant in the Dues

robbery, testified that Defendant drove the group of four men to the target victim's residence, (ECF No. 632 at 41), and Barcliff stated that Defendant went into the apartment second just behind Davis and that all four participants were armed. (*See* ECF No. 631 at 26–27 ("Q. Why did [Davis] and [Defendant] go in first this time? A. They'd kind of argue about who don't do anything, who was just sitting around, so it was kind of like a competition or to prove themselves to one another that neither one are scared and that they will go in first.").) However, Davis stated that only Barcliff and Glenn had firearms and that prior to entry one of them handed a firearm to Davis. (*See* ECF No. 683 at 25.) Barcliff also testified that he believed Defendant wore a Gator ski mask during the robbery. (*See* ECF No. 631 at 88–89; *see also* ECF No. 679-11 (Gov't Ex. 117).)

According to Dues, the four men broke into his residence while he was there with his two children, pointed guns at him, and forced him into a back room. (*See* ECF No. 682 at 184–85.) Barcliff testified further that once he entered the apartment, he saw Davis holding Dues at gunpoint while Dues was holding his infant child. (ECF No. 631 at 27, 28 (noting that a second child was in a back room).) Dues added that the masked robbers took approximately $500 from his wallet, (*see* ECF No. 682 at 184–85; *but see* ECF No. 683 at 27–28 (Davis test.) (stating that Dues had about a thousand dollars on him that the men took)), and both Glenn and Davis stated that the robbers took a quantity of marijuana from a Mason jar inside the apartment, (*see* ECF No. 632 at 39, 40; ECF No. 683 at 27–28).

The evidence adduced at trial and detailed in the Court's previously entered memorandum opinion and order denying Defendant's post-trial motions, not to mention the jury's verdict, demonstrates that Defendant entered into an agreement with Barcliff, co-defendant Jamaa Johnson, Davis, and Glenn to rob drug dealers and to use firearms in furtherance of that conspiracy. (*See*

4

ECF No. 873 at 46–53.) To facilitate the robbery of Dues, Defendant drove himself, Barcliff, Davis, and Glenn to the target victim's residence in Kanawha City, which highlights his role in planning and organizing the robbery. Not only did Defendant transport the group to the site, but the evidence also shows that Defendant was the second robber to enter the residence. Defendant exerted some decision-making authority by entering the residence with Davis before Barcliff and Glenn. Defendant and Davis took the lead and directed Dues to cooperate despite the fact that they could have backed out of the apartment before the other two conspirators entered. There is evidence that Davis pointed a gun at Dues, which supports a finding that Defendant may be less culpable than Davis. However, there is no evidence that Defendant's conduct was less culpable than that of Barcliff or Glenn. Dues testified that four masked men entered his apartment with guns drawn and that the four men took money from his wallet. Davis and Glenn both testified that all four men took marijuana from the residence as well. The conspirators knew and hoped that there would be ample amounts of high-grade marijuana inside the residence, so Defendant stood to benefit equally from his participation. There simply is no evidence other than Davis pointing a gun at the victim to support a finding that compared to the other three individuals who participated in this robbery Defendant was less culpable.

As to this object offense, Defendant has not met his burden of showing by a preponderance of the evidence that he is "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt. n.5; *see Hassan*, 742 F.3d at 150; *Powell*, 680 F.3d at 358. Accordingly, the Court finds that Defendant is not entitled to a two-level minor role reduction under Guidelines Section 3B1.2(b) for Group One and **OVERRULES** this objection.

2. Group Three: Robbery of Psong Chu So

As to the robbery of Psong Chu So ("So") in Dunbar, West Virginia, Barcliff testified at trial that Defendant relayed to him knowledge of the target victim who supposedly had "large sums of cocaine, cash, and marijuana." (ECF No. 631 at 30–33, 77–78; *see also* ECF No. 683 at 69–70.) During Barcliff's testimony, he described a previous robbery of So that he committed with Defendant's assistance after Defendant identified So as a potential target. (ECF No. 631 at 30–33.) During the first robbery of So, Defendant met with So in a parking lot while Barcliff approached both individuals from the back and robbed them of marijuana at gunpoint. (*See id.* at 34.) At some point after the first robbery of So, according to Barcliff, he and Defendant had a conversation reflecting "[t]hat [they] needed to get [So] and get the drugs." (*Id.* at 78.) Glenn confirmed that Defendant set up this second robbery of So in Dunbar. (*See* ECF No. 635 at 21, 143–44.) Additionally, Mary Beth Cutlip ("Cutlip") testified that she overheard a conversation between Defendant, Glenn, Davis, and Barcliff in the parking lot of her apartment building about an upcoming robbery. (*See* ECF No. 758 at 89–91.) She said that the men were arguing because they wanted Barcliff to call off work so he could join them, but Barcliff told them "to wait because he could not call off work." (*Id.* at 91.) Cutlip stated that after Barcliff left for work that evening, Defendant, Davis, and Glenn left her apartment in Defendant's red Charger "to do it." (*Id.*)

Glenn testified that he, Davis, and Defendant left Cutlip's apartment in Defendant's car and went to the target victim's apartment in Dunbar where they sat for some time. (ECF No. 635 at 24.) After the target victim did not arrive for a while, they went back to Cutlip's residence before returning to the target's apartment. (*Id.*) After leaving the residence and returning a third time, Defendant identified both the victim and his car when it pulled up. (*See* ECF No. 683 at

6

72.) As So was attempting to get back in his car, the three conspirators grabbed him and led him to his apartment. (*See* ECF No. 635 at 25–26.) After entering the apartment building but before reaching the apartment door, Davis testified that Defendant attempted to zip-tie So's hands but only secured one of his wrists. (*See* ECF No. 683 at 74.) So told his wife, who was already inside, not to open the door, and the three men took off once she started screaming. (*See* ECF No. 635 at 27–28.) Defendant and Glenn left the scene on foot while Davis drove the red Charger. (*See id.* at 29–30.) Despite not getting inside the apartment, Glenn testified that a wallet and car keys to the victim's BMW were stolen during incident. (*Id.* at 30.)

Before the commission of this object offense, Defendant identified the target victim twice: first when Barcliff previously robbed the victim with Defendant's assistance, and again before the robbery described above. While this fact is not dispositive of Defendant's involvement, this robbery could not have occurred without Defendant's proactivity. Like the Dues robbery, Defendant drove the conspirators to the victim's residence in his red Dodge Charger. Not only by driving to the site of the robbery, but also by driving away and returning on two separate occasions until the target victim showed up, Defendant exercised extensive decision-making authority. He could have driven away at any point but chose to act in furtherance of the conspiracy. Further, there is evidence that Defendant attempted to zip-tie So's hands while Davis and Glenn held him. Assuming Defendant brought the zip-ties himself, he was heavily involved in planning and organizing the attempted robbery. Thus, by identifying the victim, driving to the scene, and attempting to restrain the victim, Defendant arguably was more involved in this attempted robbery than the other two men. Defendant also stood to benefit from the criminal activity by the suspected drugs that he believed were inside the residence.

Based on these facts, Defendant has failed to show by a preponderance of the evidence that he is "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt. n.5; *see Hassan*, 742 F.3d at 150; *Powell*, 680 F.3d at 358. As such, the Court finds that a two-level minor role reduction under Guidelines Section 3B1.2(b) is not appropriate for Group Three and **OVERRULES** the objection.

B. *Specific Offense Characteristics*

Defendant additionally argues that two enhancements applied to Group Two are erroneously included in the PSR. Namely, he asserts that the six-level firearm enhancement under Guidelines Section 2B3.1(b)(2)(B) and the two-level physical restraint enhancement under Guidelines Section 2B3.1(b)(4)(B) should not be applied to that group's calculation. (*See* ECF No. 894 at 2–3; PSR at 30 ¶¶ 139, 140.) As to these two enhancements, "[t]he government bears the burden of proving the facts necessary to establish the applicability of [a sentencing] enhancement by the preponderance of the evidence." *United States v. McGee*, 736 F.3d 263, 271 (4th Cir. 2013) (alteration in original) (quoting *United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001)), *cert. denied*, 134 S. Ct. 1572 (2014); *see also United States v. Hines*, 449 F.3d 808, 815–16 (7th Cir. 2006).

Defendant argues in his written objections and reiterated at the hearing on December 8, 2017, that the basis for these two objections is that Defendant himself did not commit the actions that are the subject of the enhancements. For example, Defendant states that "Barcliff possessed and 'used' the firearm in question" and that "the testimony [at trial] established that defendants Barcliff and Glenn restrained the victims . . . ." (ECF No. 894 at 3.) Nonetheless, "in the case of jointly undertaken criminal activity . . . all acts and omissions of others that were—(i) within

the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction" may be considered when determining specific offense characteristics. *See* U.S.S.G. § 1B1.3(a)(1)(B). If the conduct of another meets the three criteria set forth in subdivisions (i) through (iii), then that constitutes relevant conduct under the provision. U.S.S.G. § 1B1.3 cmt. n.3(A). The Court "must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake," and the defendant's accountability is limited by the scope of that agreement. *See* U.S.S.G. § 1B1.3 cmt. n.3(B) ("Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B)."). After determining whether the conduct is within the scope of the criminal activity and in furtherance of that activity, the Court must determine if the conduct "was reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3 cmt. n.3(D) (emphasizing that reasonably foreseeable conduct is not necessarily identical to the criminal activity that the defendant agreed to jointly undertake).[2] Notably, Defendant conceded at the hearing that he had a difficult time getting around this jointly undertaken criminal activity provision within the Guidelines chapter on relevant conduct.

Both of these enhancements are applied to Group Two for which the robbery of Nicholas Hammitt ("Hammitt") in Bristol, Virginia, serves as the object offense. Barcliff testified at trial

---

[2] "For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery), was in furtherance of that criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. § 1B1.3 cmt. n.3(D).

9

that he committed this Bristol robbery with Glenn, Davis, and Defendant. (*See* ECF No. 631 at 65–72.) The goal of the robbery, according to Glenn, was to acquire cocaine or other drugs. (ECF No. 635 at 4.) Barcliff said that Defendant drove his Dodge Charger to the site of the robbery, and the four participants staked out the house all night before committing the robbery the next morning. (ECF No. 631 at 66, 68.) The victim, Hammitt, stated that he was sitting on his house's porch with a friend when three men approached him asking to purchase marijuana. (ECF No. 758 at 11.) After telling them that he would smoke with them, the men came onto his porch, and one of them pepper sprayed him in the face. (*See id.*) Glenn testified that once on the porch, Barcliff pulled a gun on Hammitt and his friend, and Davis pepper sprayed them. (ECF No. 635 at 7.) After a struggle between one of the victims and Barcliff and Glenn, zip-ties were put on both of the victims. (*See id.* at 7–8.)

Hammitt testified that in the approximately five minutes during which the men were in his house, they took several firearms, cocaine, marijuana, money, and a digital camera. (ECF No. 758 at 12, 14–20.) Glenn testified that a Kel Tec 9 mm handgun with laser site was taken off the hip of one of the victims, (*see* ECF No. 635 at 8), and a 12-gauge shotgun, PRL-22, AK-47, and ammunition for all of those firearms in "Army containers" and medicine pill bottles were found in another room. (*See id.* at 9–10.) Barcliff stated that Defendant came inside the house after the victims were zip-tied, and Defendant helped carry from inside the house to the car "an AK-47, a 12-gauge shotgun, a couple [G]lock handguns, some ammunition, a military knife, [and] a little bit of cocaine . . . ." (ECF No. 631 at 71; *see also* ECF No. 635 at 12; ECF No. 683 at 46.)

1. Six-Level Enhancement for Use of a Firearm

First, Defendant objects to the six-level enhancement applied in Paragraph 139 of the PSR

10

for use of a firearm during the robbery of Hammitt. (*See* ECF No. 894 at 2–3; PSR at 30 ¶ 139 ("During the robbery, Mr. Barcliff pointed a firearm at the victims, which appears to represent conduct beyond merely brandishing, displaying, or possessing a firearm.").)

The Guidelines provides for a six-level increase if a "firearm was otherwise used" in the course of a robbery. U.S.S.G. § 2B3.1(b)(2)(B). "Otherwise used . . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing,[3] displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1 cmt. n.1(I); *see also Smith v. United States*, 508 U.S. 223, 232 (1993) (emphasizing the type of "use" that fits within the Guidelines' "otherwise used" definition and noting that "[w]hile pistol-whipping a victim with a firearm might be 'more than' brandishing, scratching one's head [with the firearm] is not"). The Fourth Circuit has noted that the gun's use during a robbery must become "actually menacing" to qualify for this six-level enhancement, such as "[p]ointing a gun while telling someone what to do . . . ." *United States v. McNeil*, 539 F. App'x 190, 191–92 (4th Cir. 2013) (alteration in original) (quoting *United States v. Bolden*, 479 F.3d 455, 463 (6th Cir. 2007)), *cert. denied*, 135 S. Ct. 104 (2014); *see also United States v. Gordon*, 19 F.3d 1387, 1388 (11th Cir.) (holding that pointing a firearm at a victim with an explicit threat is more than merely brandishing a firearm), *cert. denied*, 513 U.S. 904 (1994); *United States v. Seavoy*, 995 F.2d 1414, 1422 (7th Cir.) (same), *cert. denied*, 510 U.S. 954 (1993). The Fourth Circuit has also held that a finding by a preponderance of the evidence that a defendant "displayed and pointed a pistol" at a victim may justify this six-level enhancement. *See United States v. Shull*, 232 F. App'x 367, 368 (4th Cir.), *cert. denied*, 552 U.S.

---

[3] Brandishing a firearm "means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." U.S.S.G. § 1B1.1 cmt. n.1(C).

11

1030 (2007).

Given the trial evidence regarding the Hammitt robbery as set forth above, the Court finds very little justification for a six-level enhancement for the use of a firearm in this robbery. The only evidence that a firearm was "otherwise used" within the Guidelines definition of the term is Glenn's testimony wherein he stated that Barcliff pulled a gun on Hammitt and his friend before Davis pepper sprayed them. (*See* ECF No. 635 at 7.) However, the victim did not corroborate this fact and did not mention seeing a firearm during his testimony. (*See* ECF No. 758 at 11 ("I remember there were three guys. . . . I think they asked to purchase some [marijuana] . . . . They come up onto the porch. I was out letting my dog out and, the next thing I knew, I was pepper sprayed.").) Barcliff's story of events supports Hammitt's testimony. (*See* ECF No. 631 at 70 ("[T]he victim was walking the dog, . . . and I approached him and asked him to purchase some marijuana . . . . He invited us into the house . . . and I had some pepper spray, and I pepper sprayed him.").) Barcliff specifically stated that he did not think he had a firearm during that robbery. (*See* ECF No. 631 at 69–70 ("Q. When you approached [Hammitt], were you armed? A. I don't -- I don't think I was. I'm not sure, honestly.").) Because the weight of evidence does not corroborate Glenn's version of events that Barcliff used a gun during this robbery, the United States has failed to prove the facts necessary to establish the applicability of this six-level enhancement by a preponderance of the evidence. *See McGee*, 736 F.3d at 271. Thus, the Court cannot justify applying the six-level enhancement under Guidelines Section 2B3.1(b)(2)(B).

Notwithstanding this finding and Defendant's argument that no firearm enhancement should apply to Group Two given that Defendant himself did not carry or use a firearm, the Court **FINDS** by a preponderance of the evidence that the Government has proven the facts necessary to

establish the applicability of a five-level enhancement for possession of a firearm for this group's calculation. *See* U.S.S.G. § 2B3.1(b)(2)(C). At trial, Barcliff testified that he believed Glenn was armed, (ECF No. 631 at 70), and Glenn confirmed that he was in fact carrying a Glock 26, (ECF No. 635 at 6). Thus, there is sufficient evidence that a firearm was possessed during this robbery. Despite Glenn's possession of a firearm, there is no evidence that Glenn actually used his firearm. As previously noted, Defendant and Glenn were co-conspirators in the conspiracy to commit Hobbs Act robbery as well as the conspiracy to use firearms in furtherance of those robberies. Because Defendant conspired with Glenn, among others, to rob drug dealers and to carry firearms in the course of that activity, Glenn's possession of a firearm during the Hammitt robbery was within the scope of the criminal activity, in furtherance of that activity, and reasonably foreseeable to Defendant. *See* U.S.S.G. § 1B1.3(a)(1)(B). The fact that Defendant was in the vehicle for most of the robbery is irrelevant. *See* U.S.S.G. § 1B1.3 cmt. n.4(B)(i) (noting that conduct committed during the course of a robbery may be attributed to the getaway driver). For these reasons, the Court **OVERRULES** Defendant's objection insofar as it requests that no firearm enhancement be applied and, instead, applies a five-level enhancement to Group Two pursuant to Guidelines Section 2B3.1(b)(2)(C) for possession of a firearm by a co-conspirator during jointly undertaken criminal activity.

2. <u>Two-Level Enhancement for Physical Restraint</u>

Defendant also objects to the two-level enhancement applied in Paragraph 140 of the PSR for physical restraint of a victim during the robbery of Hammitt. (*See* ECF No. 894 at 2–3; PSR at 30 ¶ 140 ("During the robbery, Mr. Barcliff and Mr. Glenn restrained the victims with zip-ties.").)

A base offense level is to be increased by two levels "if any person was physically restrained to facilitate commission of the offense . . . ." U.S.S.G. § 2B3.1(b)(4)(B). "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K); *see also McNeil*, 539 F. App'x at 192. The Fourth Circuit construes this enhancement broadly. *See United States v. Dimache*, 665 F.3d 603, 607 (4th Cir. 2011) (applying the enhancement where "the defendant point[ed] the gun at the victim, thereby restricting the victim's movements and ensuring the victim's compliance with the desires of the defendant"), *cert. denied*, 566 U.S. 914 (2012); *United States v. Wilson*, 198 F.3d 467, 472 (4th Cir. 1999) (holding that the victim was physically restrained by being prevented at gunpoint from leaving the car until the defendants took her money and got control of the car), *cert. denied*, 529 U.S. 1076 (2000). In doing so, the Fourth Circuit has emphasized that "[b]y use of the words 'such as,' it is apparent that 'being tied, bound, or locked up' are listed by way of example rather than limitation." *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989) (holding that a victim was physically restrained when she was "clearly prevented from leaving the room" upon the lighting of a pipe bomb fuse). The act of tying a victim's "hands behind his back with plastic pull ties indisputably constitutes physical restraint" for purposes of the enhancement. *See United States v. Lilly*, 285 F. Supp. 2d 737, 740 (S.D. W. Va. 2003).

Defendant's objection to the application of this enhancement, like his objection to the firearm enhancement, appears to be premised on the fact that he did not restrain the victims personally. (*See* ECF No. 894 at 3 ("[T]he testimony established that defendants Barcliff and Glenn restrained the victims, while Mr. Gillespie parked the vehicle near the residence to load it with stolen items . . . .").) The evidence supports Defendant's assertion that Barcliff and Glenn

14

restrained Hammitt and his friend with zip-ties during the robbery. (*See* ECF No. 631 at 70 (Barcliff test.); ECF No. 635 at 7–8 (Glenn test.).) Under the relevant conduct principles of Section 1B1.3 for jointly undertaken criminal activity, the action of Defendant's co-conspirators in physically restraining the victims may be attributed to Defendant because it was within the scope and in furtherance of the criminal activity. *See* U.S.S.G. § 1B1.3(a)(1)(B)(i)–(ii). Further, it was reasonably foreseeable to Defendant who attempted to restrain another victim, So, with zip-ties later the same day. (*See* ECF No. 683 at 74.) *See also* U.S.S.G. § 1B1.3(a)(1)(B)(iii). Binding the victims' hands with zip-ties is a form of physical restraint, *see Lilly*, 285 F. Supp. 2d at 740, and the fact that Defendant remained in the car does not alter the enhancement's applicability, *see* U.S.S.G. § 1B1.3(a)(1)(B) cmt. n.4(B)(i).

The Government has met its burden of proving by a preponderance of the evidence the facts necessary to establish the applicability of this sentencing enhancement. *See McGee*, 736 F.3d at 271; *Hines*, 449 F.3d at 815–16. Therefore, the Court finds that Barcliff and Glenn's actions may be attributed to Defendant under the principles of relevant conduct and that a two-level enhancement for physical restraint applies to Group Two. Accordingly, the Court **OVERRULES** this objection.

  C. *Mandatory Minimum Sentences for Counts Six and Twelve*

Defendant objects to the inclusion of the statutory mandatory minimum sentences set out in Paragraphs 171 and 172 of the PSR for his convictions on Counts Six and Twelve for use of firearms in a crime of violence. (*See* ECF No. 894 at 3; PSR at 33 ¶¶ 171, 172.) As discussed at length at the hearing held on December 8, 2017, the constitutionality of these two convictions may be called into question by the Supreme Court's forthcoming decision in *Dimaya v. Sessions*, No.

15-1498, and two Fourth Circuit cases currently held in abeyance pending *Dimaya*. These uncertainties were the basis for granting Defendant's motion to hold sentencing in abeyance, (ECF Nos. 888, 909). Because the merit of this objection is contingent on the Supreme Court's opinion in *Dimaya*, the Court **DEFERS** until a later date a ruling on this objection.

### D. *Footnote 10 in Paragraph 208 of the PSR*

Defendant further objects to the inclusion of footnote 10 in Paragraph 208 of the PSR on the basis that it includes a quotation by Defendant that is "ambiguous and susceptible to different interpretations." (ECF No. 894 at 3; *see* PSR at 39 n.10.) The footnote is included in the PSR's section detailing Defendant's personal and family data, and Paragraph 208 states that Defendant's "mother said her son is a good-hearted person and his issues in life are because of his choices in friends. She said her son is not a threat to society." (PSR at 39 ¶ 208.) Footnote 10 in that paragraph describes a jail phone call provided to the probation officer by the Government during which Defendant called a female with whom he had a romantic relationship and explained to her that a prison sentence of over yen years would make him "a worse individual" and that this criminal justice process "is creating a monster." (*Id.* n.10 ("[W]hen I come out I am going to be a menace to society.").)

The footnote appears to be included to contrast the statement by Defendant's mother that Defendant "is not a threat to society." (*Id.* ¶ 208.) The probation officer stated in his response to the objection, however, that the footnote is presented as "the government's position rather than as a factual statement." (*Id.* at 49.) That response also states that the information in the footnote is "relevant for designation purposes and for risk assessment/development of supervision strategies when the defendant is released." (*Id.*) The Court is unaware of any legal basis for excluding the

footnote and is satisfied with the probation officer's response to the objection. Recognizing also that this objection does not affect the Guidelines calculation in Defendant's case, the Court **OVERRULES** the objection.

## II. UNITED STATES' OBJECTION

The Government objects to the inclusion of a two-point minor role reduction in Group Two based on Defendant's participation in the group's object offense. (*See* ECF No. 907; PSR at 30 ¶ 143.) The standard for applying a two-level reduction pursuant to Section 3B1.2(b) is set out above, *see* discussion *supra* Section I.A., as are the facts adduced at trial related to the Hammitt robbery, *see* discussion *supra* Section I.B. Again, Defendant bears the burden of proving entitlement to this minor role reduction by a preponderance of the evidence. *See Pratt*, 239 F.3d at 645; *see also Hassan*, 742 F.3d at 150.

First, Defendant's understanding of the scope and structure of the Hammitt robbery is similar to that of the other robberies. The evidence indicates that Defendant entered into a conspiracy to rob drug dealers and that the plan to travel to Bristol, Virginia, and rob Hammitt was consistent with that conspiracy. (*See* ECF No. 635 at 4.) There is evidence that Defendant participated in the planning and organization of this robbery as he drove the other three conspirators to the site of the robbery. (ECF No. 631 at 66.) Defendant's decision-making authority related to this robbery, though, seems constrained to his control of the vehicle. While the facts indicate that Defendant remained in the car with the three others all night while they watched the house, Barcliff testified that at one point, Davis got out of the car to break into the target victim's vehicle and steal his license so the group would have "a visual on" Hammitt before committing the robbery. (*See id.* at 68.) The evidence further demonstrated that Defendant

stayed in the car the next morning when Barcliff, Glenn, and Davis exited the vehicle and approached Hammitt's house. (*See* ECF No. 635 at 5–6. *But see* ECF No. 631 at 70 (Barcliff test.) (indicating that Davis remained in the car with Defendant until the victims were restrained).) The testimony provided that at least Barcliff and Glenn, and potentially Davis, approached and initiated the conversation with Hammitt, pepper sprayed him and his friend, and restrained the men. (*See* ECF No. 631 at 70–71; ECF No. 635 at 7–8; ECF No. 758 at 11.) While those actions of Defendant's co-conspirators only took approximately five minutes, (*see* ECF No. 758 at 12), they are the most significant events of the robbery. Defendant did not enter the house until after the victims were zip-tied and only helped carry items from the house back to the car. (*See* ECF No. 631 at 71; ECF No. 635 at 12; ECF No. 683 at 46.)

Compared to the other participants, Defendant did not break into the target victim's vehicle or interact with the two victims, nor did he physically harm, threaten, or restrain them. It is clear that Defendant understood the scope and structure of the criminal activity, helped organize the robbery to a degree, and exercised some decision-making authority as the group's driver. Nonetheless, the nature and extent of his participation, which is to be assessed on the facts and circumstances of the particular robbery, support a finding that Defendant does not appear to be as culpable as the other three participants. The acts performed during the course of the robbery fall heavy on the other participants, and because Barcliff waved Defendant in the house when it was time to help carry out items, Defendant did not exhibit the type of responsibility and discretion as his co-conspirators despite the fact that he stood to benefit from the robbery. Even recognizing that Defendant transported the group and helped carry items out of the house, the Court finds by a preponderance of the evidence that he was "less culpable than most other participants" in the

18

Hammitt robbery, but his role cannot be described as minimal. *See* U.S.S.G. § 3B1.2 cmt. n.5. Defendant has met his burden of showing the applicability of a minor role reduction for this object offense. As such, the Court **OVERRULES** the Government's objection.

### III. CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Defendant's objections to the PSR regarding the application of minor role reductions for Group One and Group Three, the firearm and physical restraint enhancements pertaining to Group Two,[4] and the inclusion of footnote 10 in Paragraph 208. The Court further **DEFERS** a ruling on Defendant's objection to the inclusion of the mandatory minimum sentences pursuant to 18 U.S.C. § 924(c) for Counts Six and Twelve until the Supreme Court issues its decision in *Dimaya v. Sessions*, No. 15-1498. Finally, the Court **OVERRULES** the United States' objection to the inclusion of a minor role reduction for Group Two in the PSR.

**IT IS SO ORDERED**.

---

[4] While the Court overrules Defendant's objection to the six-level firearm enhancement applied to Group Two insofar as Defendant argued that no firearm enhancement should apply, the Court finds by a preponderance of the evidence, as discussed above, that a five-level enhancement for possession of a firearm pursuant to Guidelines Section 2B3.1(b)(2)(C) is the appropriate enhancement for Group Two. *See* discussion *supra* Section I.B.1.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: December 27, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE